## *MONTPELIER ACADEMY TRUSTEES *vs.* GEORGE ET AL.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE
PARISH OF ST. HELENA, JUDGE MORGAN, OF THE THIRD, PRESIDING.

Where a corporation is made the mere creature of legislative will, esta-
blished for the general good, endowed by the state alone, the legislature
may, at pleasure, modify the act of incorporation or law, by which it was
created. The trustees of such a corporation are mere mandatories of
the State.

But where certain individuals are incorporated and constituted a body
politic as trustees of an academy, with power to acquire property, and
receive donations from individuals and the state, on condition to establish
an academy and educate pupils; and, also, receive a yearly grant from
the state, on condition to teach a certain number of indigent children, and
comply with such conditions : *Held*, that the corporators acquired vested
rights, in the nature of a contract, which cannot be taken from them by
the state, without a manifest violation of the Constitution of the United
States. ART. 1. SEC. 10.

This is an action instituted by the board of trustees of the
Montpelier Academy, who were appointed by the original

*This case was decided at the January term, 1839, but suspended by an
application for a re-hearing.

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

act, creating and incorporating said academy, and constituting them a body politic, praying for a writ of *quo warranto* to issue against the defendants, who, they allege, have usurped the authority of trustees under an act of the legislature, which they allege to be unconstitutional; and requiring said defendants to show by what authority they exercise the rights and privileges of trustees of the Montpelier Academy.

The petitioners show, that by an act of the legislature, passed in 1833, the Montpelier Academy was incorporated, and they were appointed trustees in said act; created a body politic and corporate, with power to acquire property by donation, purchase or otherwise, on condition of establishing an institution for the purposes of education, and that they received a grant from the state of twenty-five hundred dollars per annum, on the further condition of educating twenty-five indigent children, and building houses sufficiently commodious to accommodate the students, &c. They allege that they have complied with the conditions of the act of incorporation, but that the legislature has, by two subsequent acts, modified and repealed their corporate rights, and ousted them from their office and corporate privileges and rights, and gave them to the defendants. They pray that the defendants be cited, and a writ of *quo warranto* awarded, requiring them to show by what authority they continue to hold and exercise the office of trustees, &c.; and that they be adjudged to deliver up to the petitioners as a corporation, all their corporate rights, records, funds, &c., with twenty-five hundred dollars in damages.

The defendants excepted to the right of the petitioners to sue, because the writ of *quo warranto* issued without proper authority, and that the plaintiffs were not the only, or all, of the trustees, but that others were created by the act of 1834; and for answer, they say that the corporate body created by the act of 1833, and modified, altered and continued, by subsequent acts, is a public eleemosynary corporation, wholly under the control of the legislature, who has the right to alter, amend, or abolish the same, whenever the public good

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

or convenience requires it; and that the defendants were appointed trustees under the act approved January 20th, 1836. They pray that the demands of the plaintiffs be rejected.

Upon these pleadings and issues the parties went to trial.

The learned and able district judge, before whom the cause was tried, summed up the case as follows :

The defence is based entirely upon the acts of 1834 and 1836, and consequently, the allegations of the plaintiff, so far as not put at issue by the pleadings, are admitted, or considered as proven. The first section, of the act of 30th of March, 1833, creates the corporation by the name and style of the Trustees of the Montpelier Academy, and "by that name, shall have perpetual succession, &c." Sec. 2d provides, that the said corporation shall have power and authority to acquire, possess and hold every species of property whatever, &c. Sec. 3d provides, that "it shall be the duty of the said trustees, and their successors in office, to administer the property and funds of the said corporation with prudence, &c. Sec. 4th, fixes the time of the meeting of the board, and authorizes the board to consider, that a member has resigned, if he should fail to attend if required, and to proceed to the election of another to fill the vacancy. By the 7th section, it is enacted, "that the board of trustees shall have power to remove all officers of their own body, as well as of the academy, at their pleasure, and again appoint others in their stead." The 10th section provides, that no part of the money appropriated by this act, shall be drawn from the state treasury, until it be proven to the state treasurer, by the certificate of the trustees of said institution, that convenient houses, sufficiently large to accommodate forty scholars, shall have been provided, and the title to which shall be vested in full property in the trustees of said academy, &c. These sections clearly establish, first, "that the board of trustees nominated in the first section, are clothed with the exclusive rights of removing members of their own body, and appointing others in their place ; and secondly, that before they could derive any benefit from the appropriation made by

EASTERN DIST. the state ; that they should acquire in full property, certain
February, 1840. real estate. Corporations are of two kinds, political and pri-
vate. Political corporations are those which have principally
for their object the administration of a portion of the state,
and to whom a part of the powers of government is delegated
to that effect. Civil corporations, are those which relate to
temporal police, such as colleges, or universities, founded for
the instruction of youth, and the like. *Louisiana Code,* 420,
421, and 422. Such acts of incorporation as involve a con-
tract, can only be repealed when the public good requires it ;
and then the legislature are bound *to indemnify* persons
who may be injured by the repeal. The eighth section of
the act under consideration, grants to the corporation the
sum of twenty-five hundred dollars per annum for four years,
on *certain onerous conditions therein expressed, and for* fur-
ther conditions, to wit : 'the acquisition of certain real estate
provided for by the tenth section.' This, in the opinion of the
court, created a contract between the state and the board of
trustees, *created by the first section of the act, and their* suc-
cessors in office, legally chosen according to the provisions of
that act ; which cannot be avoided, modified or changed
by the legislature, without the assent of the corporators."
*Constitution of the State of Louisiana, article 6th, section 20.*

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

There was judgment restoring the possession of the corpo-
ration, estate real and personal, *together with the records
and archives thereunto belonging,* to the plaintiffs, reserving
*to them any rights they might have for damages.* The de-
fendants appealed.

*Andrews,* for the plaintiffs :

1. The exception, that the trustees made by the act of
1834, as well as those originally constituted trustees by the
act of 1833, are not made parties to the suit.

They are not recognized as being trustees. The legisla-
ture had no right to appoint them. But any individual may
issue out, and maintain writ of *quo warranto. See Code
of Practice, article* 869.

2. It is contended, that this is a public eleemosynary cor-

poration, and under the entire will and control of the legis- EASTERN DIST.
lature, and can be altered or abolished by them, at pleasure. *February* 1840.

What is a public corporation? What a private one? *See* MONTPELIER ACADEMY TRUSTEES *vs.* GEORGE ET AL.
*Louisiana Code, articles* 420, 421, and 422.

3. The act of 1833, incorporating the Montpelier Acade-
my, is a private act of incorporation. It creates a commuta-
tive contract between the legislature of Louisiana, and the
corporators, and their successors, duly elected by themselves,
in conformity with their charter ; and the act of 1836 is a law
impairing the obligation of that contract; and consequently,
null and void. *Constitution of the U. S., article* 1, *section* 10.
*Constitution of Louisiana, article* 6*th, section* 20.

See also the case of the trustees of *Dartmouth College* vs.
*Woodward,* 4 *Wheaton's Reports,* 518. See, also, 11 *Peters'*
420, *Charles River Bridge* vs. *Warren Bridge,* which will be
relied upon by the defendants, but it is not a parallel case.

4. The charter gives perpetual succession to the indivi-
duals in whose favor it is passed, and it provides for the man-
ner in which said succession shall be kept up, viz : by elections
duly made by them, said corporators, according to said char-
ter. *See act of* 1833, *page* 108, *section* 1, 3, 5, and 7.

5. The article of the code 438, if it indeed can be applied
to a case like this, must be strictly pursued. It authorizes
the legislature, when the public good requires it, to abolish
corporations by indemnifying and remunerating the corpora-
tors, in the same way as any private property can be taken
for public use. But this does not authorize them to continue
the corporation under the control of others, any more than
their having the power, or the District Court having the
power, to grant divorces or dissolve matrimony, authorizes
them to appropriate a man's wife to themselves, or to give
her to another.

*Lawson,* for the defendant :

Corporations, legally established, can exercise and enjoy
all the rights which belong to them by their charters, and
noneother. *Louisiana Code, article* 424 ; 2 *Kent's Com.* 226.
The modern doctrine is to consider corporations as having

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

such powers as are specifically granted by the act of incorporation. 2 *Kent's Com.* 239. The plaintiffs contend, that the act of incorporation, by which the corporation was called into existence, is a contract between the state and the corporators; and that this contract has been violated on the part of the state, and the defendants in this case. The defendants deny the allegations of plaintiffs, and aver that they have committed no wrong, because they are exercising functions conferred on them by the legislature, and that the legislature had a right to pass the act clothing them with authority. The issue then was, in the court below, does the act of incorporation amount to a contract between the state and the corporators? and, if so, had the legislature a right to oust the trustees, and substitute the defendants? These questions, I shall consider at present, so far as the refusal of the judge *a quo* to continue the case or hear testimony, is concerned.

2. If the act of incorporation is a contract between the state and the trustees, how is it to be established? By the production of the act. How is its violation to be shown? By proof, unquestionably, as in all other cases of violations of contract.

The defendants admit that they enjoy the franchises originally granted to the plaintiffs, but justify that enjoyment and possession by an act of the legislature, expressing the sovereign will of the state. Was the court, then, correct in refusing to continue the case, and to hear evidence in defence? Or in other words, was the judge correct in receiving the admissions of defendants, as evidence of the violation of a contract, and rejecting so much of the admission as justified that possession, by an act of the legislature.

The rule of law is, that admissions must be taken together, and the court violated this indisputable elementary principle, in refusing to hear evidence.

3. The judge, in refusing to hear evidence, violated the clearest principles of law. He, in substance, asserted that there was no contingency that would justify the legislature in interfering with the franchises originally granted.

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

Suppose the legislature, subsequent to the incorporation, "deemed it necessary, or convenient to the public interest," or the corporation had forfeited its charter by "the abuse of its privileges," or the refusal "to accomplish the conditions" on which they had been granted, would it not be necessary for the party who is accused of usurping the franchises of others, to show the reasons for the exercise of these privileges? It is substantially averred by the defendants, that the contingency contemplated by law, did occur, in alleging that the legislature had the power reserved in the elementary principles of the *Louisiana Code, article* 438.

4. The corporation is a public one, and the legislature has the power to alter, amend or abolish its charter, whenever "they deem it necessary or convenient to the public interest," or the corporation abuse its privileges, or refuse to perform the conditions of the act of incorporation. *Louisiana Code, article* 438. *Old Code, page* 92, *article* 22.

5. The power to dissolve corporations, necessarily includes the right of resuming the franchises and privileges, which had been granted, and of transferring them to other persons. If I sell a tract of land to A, with the right reserved of resuming my property whenever I deem it convenient or necessary to my interest, can it be pretended that A, has acquired an unconditional and absolute interest in the property? Or that I cannot resume the possession and substitute B, in the use and enjoyment of it, without violating my contract with A. Admitting, then, for argument, that a legislative grant is a contract within the intendment of the constitution, yet it must be so with all the conditions imposed by law. The elementary principles of our code enter into, and form a part of that contract, and the legislature may, whenever they deem it necessary or convenient, abolish it by dissolving the corporators, and by substituting others.

6. In a public grant, nothing passes by implication ; and the act of incorporation can contain nothing exclusive of the public right to resume the franchises or privileges granted to the plaintiffs. 11 *Peters' Reports,* 547 ; 11 *Ibid.* 539.

7. If a contract to that effect should be implied, it would

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

be void for want of authority in the legislature, to make such a surrender of the superintendence of education. The right thus said to be parted with, is one which is essential to the security and well being of society; entrusted to the legislature for purposes of government and general good, and such rights are never presumed to be conveyed or restricted. They are entrusted to the legislature to be exercised, not bartered away ; and it is indispensable that each legislature should assemble with the same measure of sovereign power that was held by its predecessors. 11 *Peters' Reports,* 422.

8. The court was clearly wrong in deciding that the old board should have the appropriation of ten thousand dollars, made on the 11th March, 1836. It cannot be presumed that the legislature intended to appropriate money in favor of a set of men whom they had, by legislative enactment, declared should be ousted, and deprived of the right of exercising the franchises granted by the act of incorporation.

9. The right of the state to control and superintend her institutions of learning, is a sovereign power. Sovereignty is inherent, inalienable, and indivisible. But it is objected that the state, by an act which substitutes the defendants to the plaintiffs' franchises and privileges, has virtually resumed its own grant. To this, it is replied, that the principle which forbids the resumption of one's own grants, does not apply to the exercise of the eminent domain. Thus, a turnpike road may be appropriated to make a canal. *Rogers* vs. *Bradshaw,* 20 *Johnson,* 735. The same rule applies to the exercise of all sovereign powers ; otherwise each legislature could not assemble with the same measure of sovereign power that was held by its predecessors.

*Carleton, J.,* delivered the opinion of the court.

The petitioners aver, that they are the trustees of the Montpelier Academy, in virtue of an act of the state legislature, in the year 1833, by which that institution was created and established in the parish of St. Helena ; that they have been for some time in the due exercise of the duties of their office as such, and possessed considerable property appertain-

EASTERN DIST.
*February*, 1840.

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

ing to the academy, viz : one house and lot, in Montpelier, known as the Montpelier Academy, and one other house, known as the steward's house, of the value, altogether, of three thousand five hundred dollars ; that they are, furthermore, entitled to receive two thousand five hundred dollars, the yearly allowance granted by the state to the institution, and that they hold other funds, by donation, amounting to fifteen hundred dollars ; that, while in the discharge of their legal functions, they were interrupted by the defendants, who have organized themselves into a pretended board of trustees of said academy, and appointed William George, their president, and thereupon passed accounts, drafted for the funds of the institution, demanded the archives, and usurped other rights, legally and exclusively invested in the petitioners, by reason of which they have sustained damage in the sum of two thousand five hundred dollars, and conclude with a prayer for citation, and a writ of *quo warranto*, requiring the defendants to show by what authority they claim to exercise the rights of trustees of said academy.   The writ was accordingly granted.

The defendants appeared by their counsel, and after setting up certain exceptions which it is not material to notice, allege that the petitioners are not the only trustees of said academy; that, by a law of the legislature of the 9th January, 1834, six other additional trustees were appointed, and continued to act in conjunction with those appointed by a law of 1833, until they were all ousted by another act of 20th January, 1836, by which the defendants, five in number, were constituted the only legitimate board, duly authorized to act ; that the said corporation created by the law of 1833, modified and continued by those of 1834 and 1836, is a public eleemosynary corporation, and wholly under the control of the legislature, and subject to be altered or abolished at their pleasure.

The District Court decreed in favor of the petitioners, requiring the defendants to restore the archives, property, revenues and funds of the institution, that had come into their possession.   The defendants have brought the cause before us by appeal.

EASTERN DIST.
*February*, 1840.

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

By a law of 30th March, 1833, entitled an "act to incorporate the Montpelier Academy," &c., it is, in substance, provided, that Dempsey Kemp, Burlin Childers, James Harvey, Thomas Kennedy, R. Mercier, William Mathews, Thomas G. Davidson, T. Smith, David Hill and James M. Bradford, be constituted a body politic and corporate, by name and style of the Trustees of Montpelier Academy, and by that name shall have perpetual succession, and be capable of appearing in all courts of justice in the state, and shall have a common seal, with power to break, alter or renew the same at their pleasure.

Section second provides, that the corporation shall have the power to acquire and possess every species of property, moveable and immoveable, by purchase, bargain, transaction, suits at law, donation, whether *inter vivos* or *mortis causa*, or in any other manner known to the laws of Louisiana; that they may again sell, rent, lease or alienate the same for the good of the corporation. That they shall have full and ample power to pass all by-laws, rules and regulations which they may deem necessary for the better government of the corporation; provided they be not contrary or repugnant to the constitution and laws of the United States, or those of Louisiana.

Section third provides, that the trustees and their successors shall administer the property and funds of the institution; shall establish their academy at St. Helena, and shall have power to employ professors and tutors, and fix their salaries.

The fourth section provides for two stated annual meetings for the board of trustees, with power to fill all vacancies, by election, that may occur among themselves.

Section seventh, provides for the removal of all officers by the corporation, and the appointment of others in their stead.

The eighth provides for the payment by the state treasurer, of two thousand five hundred dollars, yearly, on condition that twenty-five indigent children be instructed and boarded in the academy, otherwise a sum in proportion to the number that shall be so instructed and boarded.

The ninth, provides for the payment to the trustees, of the

moneys belonging to the parishes of St. Helena and Livings- Eastern Dist.
ton, which have been heretofore applied to the use of primary *February,* 1840.
schools.

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

The tenth section declares, that the two thousand five hundred dollars, appropriated by the state, shall not be drawn from the treasury, until it shall appear, that the trustees have provided sufficient houses, conveniently large for the accommodation of forty scholars, the title of which shall be in the academy.

By a supplemental law of the 9th January, 1834, John Holloway, John George, Hillory Kemp, Jos. Killian, Senr., John Killian and William Venables, are appointed additional trustees to those named in first section of the act of 1833.

By an amendatory act, passed the 20th January, 1836, it is. provided, that the first section of the above act be so amended " that the board of trustees of the Montpelier Academy, shall be composed of only *five members,* and that Robert Duncan, John Killian, B. Spillers, Zachariah Nettles and William George, compose the said board of trustees."

The second section provides for the repeal of all laws or parts of laws, contrary to the provisions of the first.

It is contended by the defendants, that the legislature had full power to alter or abolish at pleasure, the law creating the corporation, and they cite the *Louisiana Code, article* 438, which declares that "a corporation, legally established, may be dissolved by an act of the legislature, if they deem it necessary or convenient to the public interest ; provided, that where the act of incorporation imports a contract, on the faith of which individuals have advanced money, or engaged their property, it cannot be repealed without providing for the reimbursements of the advances made, or making full indemnity to said individuals," &c.

On the part of the plaintiffs, it is insisted that the law of 1833, created a contract between the state, the trustees, and donors of property to the institution, and that the acts of the legislature of 1834 and 1836, are contrary to the constitution of the United States, and of Louisiana, both of which declare in the same language, that no state legislature shall pass

EASTERN DIST. any law impairing the obligations of contracts. *Constitution*
February, 1840. *of the U. S., article* 1, *section* 10 ; *Constitution of Louisiana,*
*article* 6, *section* 20.

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

This, therefore, is the question raised for our consideration.

The Civil Code recognizes two classes of corporations, political and private. The private is again divided into civil and religious, to the former of which belongs the corporation of the Montpelier Academy.

*Where a corporation is made the mere creature of legislative will, established for the general good, endowed by the state alone, the legislature may, at pleasure, modify the act of incorporation, or law by which it was created. The trustees of such a corporation are mere mandatories of the state.*

There can be no doubt, that where a "corporation is the mere creature of legislative will, established for the general good, and endowed by the state alone, the legislature may, at pleasure, modify the law by which it was created. For in that case, there would be but one party affected, the government itself, and therefore not a contract within the meaning of the constitution. The trustees of such a corporation would be the mere mandatories of the state, having no personal interest involved, and could not complain of any law that might abridge or destroy their agency. But it would be otherwise with a corporation, such as that under consideration : for though a part of the endowment of the Montpelier Academy may eventually proceed from the state, yet they bestow nothing, until the institution shall be able, from its own resources, to afford accommodations for forty scholars, when a sum not exceeding two thousand five hundred dollars, is to be annually paid out of the treasury, to be graduated by the number of indigent students that are boarded and instructed in the school. So that the institution does, in truth, originate in private charities, not at all affected in its essential character by the moneys given by the state. The trustees and instructors do not thereby become agents or officers of the government, nor does the property purchased, or the donations made, appertain to the public. The power to appoint all the officers of the institution still abides exclusively in the trustees, who fix the course of studies, the salaries to be paid, fill all vacancies that occur, and administer and apply the funds of the institution at their pleasure.

Again, the trustees named in the first section of the charter of 1833, are authorized to acquire property in all the modes

known to the laws of Louisiana, one of which, by donation EASTERN DIST.
inter vivos, is expressly mentioned.  By the documents coming *February*, 1840.
up with the record, it appears that they did accordingly pur-  MONTPELIER
chase certain real property, and on the 10th January, 1834, ACADEMY<br>TRUSTEES
receive by donation from I. T. Preston, a house suitable for *vs.*<br>GEORGE ET AL.
the academy, and the lands on which it stood.  The persons
then acting as trustees, were those designated in the charter
of 1833, or others appointed as their successors under that
law.  They accepted the trusts, entered upon the duties
prescribed, and became the assigne and donors of all
acquisitions made for the benefit of the academy.  The
donation was made to them, not to the defendants; who were
unknown to the donor, and appointed subsequently in a way
not recognized by the charter.  He could not have anticipated,
and never consented that his donation should pass into other
hands than those of the trustees created by the law of 1833.
The state stipulated with him, through these trustees, that
his gifts should inure to the benefit of the academy, and be
forever administered by the persons named in that act, and
their successors chosen as is therein prescribed.  It was clearly
a contract entered into between the donor and trustees, for
the transfer and perpetual security of property, under the
plighted faith of the state.  Nevertheless, the legislature
have entirely overthrown this board of trustees without obser-
vance of any of the forms of law, and transferred, against
their consent, all their powers and rights to five other persons,
whom they substitute and appoint in their stead.

It is plain that two boards of trustees cannot exist at the
same time.  If the five created by the act of 1836, have a
legal existence, then the first board is abolished.  And if the
legislature can, at pleasure and without judicial proceedings,
destroy one board and create another, there is no constitutional
limit to their power.  They might proceed one step further,
abolish both boards and appropriate the funds of the institu-
tion to the use of the state.  Such would be the alarming
consequences to which the doctrines set up by the defendant's
counsel must lead, unless some restraint be set upon legisla-
tive authority.

EASTERN DIST.
*February*, 1840.

MONTPELIER
ACADEMY
TRUSTEES
*vs.*
GEORGE ET AL.

This view of the subject is abundantly sustained by English authorities, were it necessary to call in their aid. *Justice Black-stone*, 2, *Com.* 57, in speaking of a corporation, says, it is a franchise for a number of persons to be incorporated and exist as a body politic, with a power to maintain perpetual succession, and to do corporate acts, and each individual of such corporation is also said to have a franchise or freedom. There is a grantor and grantee whose assent is necessary; the king parts from his prerogative under an implied promise not to bestow the same franchise on another corporate body. It therefore involves a contract not to re-assert the right, to grant it to another, or impair it. And *Justice Buller,* in the case of *King* vs. *Passmore,* 3 *Term Rep.* 246, observes, that the grant of incorporation is a contract between the crown and a number of persons, the latter of whom undertake, in consideration of the privileges bestowed, to exert themselves for the good government of the place. If they fail to perform their part of it, there is an end of the compact. To the same effect may be consulted, *Powell on Contracts,* 6; *Fletcher* vs. *Peck,* 6 *Cranch,* 87; 1 *Lord Raymond,* 5; 2 *Term Reports,* 346; 1 *Kyd on Corporations,* 25.

The sanctity of contracts is equally protected by that system of jurisprudence from which our own is derived. *Nemo potest mutare consilium suum in alterius injuriam. Digest, tit.* 50; *l.* 75. *Sicut ab initio libera est potestas habendi, vel non habendi contractus, ita renuntiare semel constitutæ obligationi adversario non consentiente nemo potest. L. sicut initio liberat,* 5 *Code, de. ob.*

Upon which a learned commentator remarks, " *Il est donc certain que nous ne pouvons pas changer de sentiment, sitot que l'acte ne dépend plus de notre volonté. Les contrats nous in fournissent un example familier, des lorsqu'ils sont clos et parfaits, l'une des parties ne peut pas s'en dégager malgrè l'autre ni rompre un traité, dont l'exécution est devenue nécessaire. Dantoine, vol.* 2, *page* 217.

Nor does our constitution create or establish any new principle of justice: it only enforces those immutable laws of natural equity that prevail throughout the world, and existed long before codes or constitutions were known.

EASTERN DIST.
February, 1840.

MONTPELIER
ACADEMY
TRUSTEES
vs.
GEORGE ET AL.

This subject has been fully examined by some of the ablest jurists in our own country, in the celebrated case of the *Dartmouth College* vs. *Woodward*, and the question finally settled by the judges then on the supreme bench of the United States, with only one dissenting voice. 4 *Wheaton*, 518.

From that case it appears, that the Rev. Eleazar Wheelock, of Connecticut, originated, about the year 1784, at his own expense and on his own estate, a school for the education of Indians ; that thereafter, various contributions and donations were made for the advancement of the institution, which was incorporated by the King of England, and erected by charter into a college, called Dartmouth College, for the general purposes of education. The number of trustees was limited to twelve ; and the usual powers of acquiring property, of sueing and being sued, &c., were imparted as to other incorporations. The trustees were, moreover, empowered to appoint all the instructors and officers of the college, and to perpetuate their own body by filling any vacancies that might occur ; no endowment whatever having been made by the crown.

The legislature of New-Hampshire, where the college was located, passed various laws, modifying and enlarging the charter of the institution. One of June, 1816, provides, that the trustees shall thereafter be called the trustees of Dartmouth University, and their number increased from twelve to twenty-one, including the old board, and to them were transferred all the powers of the trustees of Dartmouth College. The act, moreover, provides for the appointment of a board of twenty-five overseers, who are invested with a general superintending authority.

The court thought that the original charter was a compact between the crown, the trustees and donors of property for the benefit of the institution, and that the acts of the legislature of New-Hampshire, by increasing the number of trustees, appointing twenty-five overseers, new modelling and enlarging the charter, and by transferring the property from the old board to the new, was a violation of that compact and repugnant to article 1, section 10, of the Constitution of the United States above cited.

But where certain individuals are incorporated and constituted a body politic, as trustees of an academy, with power to acquire property and receive donations from individuals and the state, on condition to establish an academy and educate pupils, and also receive a yearly grant from the state, on condition to teach a certain number of indigent children and comply with such conditions: *Held,* that the corporators acquired vested rights, in the nature of a contract, which cannot be taken from them by the state, without a manifest violation of the constitution of the United States, article 1, sec. 10.

The question involved in the cause now under consideration is, in principle, essentially the same with that settled by the Supreme Court of the United States, in the case of the Dartmouth College. The two cases differ only in the degree of injury complained of; that tribunal thought that the rights of the corporators were infringed, by increasing the board of trustees from twelve to twenty-one members : then; for a much stronger reason, is the charter of the Montpelier Academy violated, by a law entirely removing one board and substituting another in its stead.

We are, then, of opinion that the law of the 30th March, 1833, incorporating the Montpelier Academy, was in the nature of a contract between the state, the trustees therein named, and the donors of property for the benefit of that institution, and that the acts of the legislature of the 9th of January, 1834, and of the 20th of January, 1836, above cited, are repugnant to the Constitution of the United States, and that of Louisiana.

Wherefore, it is ordered and decreed, that the judgment of the District Court be affirmed, with costs.

*Lawson,* on behalf of the defendants, applied for a re-hearing, and the case was suspended until this term, when a re-argument was had.

*Morphy, J.,* delivered the opinion of the court.

This case has come before us on a re-hearing. The grounds and arguments urged by the appellants, are substantially the same as were addressed to the court, on the former trial ; although, from the zeal and industry of counsel, they have received new illustrations and have been much more fully developed. After the most attentive consideration, we have been able to give to the whole subject, we must declare that the views of this court, as at present organized, have coincided with those expressed in the opinion already delivered :

It is, therefore, ordered, that the judgment of this court remain undisturbed.