The State, *ex rel.* Robinson, *v.* Carr, Auditor of State.

ELLIOTT, J., did not participate in the decision of this cause.

Filed June 22, 1887.

————————◆————————

|111  335
129  450

No. 13,809.

THE STATE, EX REL. ROBINSON, *v.* CARR, AUDITOR OF STATE.

STATE UNIVERSITY.—*Character of Corporation.*—*Endowment Fund.*—*Interest.*—The State University is not a public corporation, but a private, or at most a *quasi* public one, and its endowment fund is not embraced by the phrase "public funds" as used in section 5205, R. S. 1881, fixing the rate of interest upon the latter class of funds at eight per cent.

SAME.—*Repeal of Statute.*—*Interest on Public Funds.*—*Auditor of State.*—Section 4600, R. S. 1881, requiring the auditor of state to loan the university fund, for which provision is made by section 4595, at seven per cent. interest, was not repealed by the later enactment, section 5205, fixing the rate of interest on public funds at eight per cent. and repealing "all acts on the subject of interest, including such as relate to interest on public funds."

From the Marion Circuit Court.

*W. B. Hord,* for appellant.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for appellee.

MITCHELL, J.—The only question for decision in this case relates to the rate of interest which the auditor of state is required to demand upon loans of the "university fund."

The law under which the State University was established provides that the university fund shall consist of certain lands in Monroe and Gibson counties, and the proceeds of sales thereof, and all donations for the use of the university, when the same is expressly mentioned in the grant, or where in such grant the term "university" only is used. Section 4595, R. S. 1881. It is made the duty of the auditor when the fund is paid into the State treasury to loan the principal,

the annual interest to be applied to the current expenses of the university, upon warrants drawn by the auditor upon the treasurer of state, on the requisition of the board of trustees of the university.  The manner of making the loans and the character of the security to be taken are particularly pre-scribed.  Section 4600, R. S. 1881, provides that, "The rate of interest required shall be seven per cent. in ad-vance, payable annually."

The later act of 1879, section 5205, R. S. 1881, provides that, "All acts on the subject of interest, including such as relate to interest on public funds, interest on purchase-money of canal, college, school, or saline lands, are hereby repealed; and, hereafter, the interest on public funds, pur-chase-money of canal, college, school, or saline lands, and upon the permanent school fund, shall be at the rate of eight dollars a year on one hundred dollars."

It became a question in the mind of the auditor of state, as to whether the act of 1879, above set out, did not by im-plication repeal section 4600, so as to make it his duty to decline to make any loan of the university fund at a less rate of interest than eight per cent.

It will be observed, that it is the interest on "public funds, purchase-money of canal, college, school and saline lands, and upon the permanent school fund," that is fixed at eight per cent.  The fund designated in section 4595 as the uni-versity fund, is not among those specifically enumerated. Unless, therefore, that fund is embraced by the phrase "pub-lic funds," it would seem to be clear that it is not affected by section 5205.  In our opinion it is not a public fund within the meaning of that section.

The university, although established by public law, and endowed and supported by the State, is not a public corpo-ration in a technical sense.  In the language of the court, in *Regents of the University of Maryland* v. *Williams*, 9 Gill & Johns. 365, 388;  "A corporation may be private, and yet the act or charter of incorporation contain provisions of a

purely public character, introduced solely for the public good. * * * A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good in the administration of civil government; an instrument of the government subject to the control of the Legislature, and its members officers of the government, for the administration or discharge of public duties, as in the cases of cities, towns," etc. *Yarmouth* v. *North Yarmouth*, 34 Maine, 411; *North Yarmouth* v. *Skillings*, 45 Maine, 133.

There are three classes of corporations, to wit, public municipal corporations, the object of which is to promote public interest; corporations technically private but of a *quasi* public character, having in view some public enterprise in which the public interests are involved, and corporations strictly private. 1 Dill. Munic. Corp., secs. 52, 53. *Dartmouth College* v. *Woodward*, 4 Wheat. 518 ; *Miner's Ditch Co.* v. *Zellerbach*, 37 Cal. 543 ; *Foster* v. *Fowler*, 60 Pa. St. 27.

The act under which the State University was established, made provision for a board of trustees, and enacted that "they and their successors shall be a body politic, with the style of 'The Trustees of Indiana University,' in that name to sue and be sued," etc. This corporate body is invested with the power to possess, take and hold, in their corporate name, all the real and personal property of the university for its benefit, and is authorized to expend the income thereof for the benefit of the institution. It is authorized to make all by-laws necessary to carry into effect the general purposes for which the institution was organized. The corporation thus organized has none of the essential characteristics of a public corporation. It is not a municipal corporation. Its members are not officers of the government, or subject to the control of the Legislature in the management of its affairs, and the university fund, derived in the manner pointed out in section 4595, does not belong to the State.

That the university was established under the direct authority of the State, through a special act of the Legislature, or that the charter contains provisions of a purely public character, nor yet that the institution was wisely established, and is and should be perpetually maintained at the public expense, for the public good, does not make it a public corporation, or constitute its endowment fund a public fund.

While it is made the duty of the auditor of state to loan out the fund when paid into the treasury of the state, and although the disposition of the lands and the management of the fund are placed in the hands of public officers of the State, the university fund, nevertheless, remains, and must continue a special fund for the exclusive benefit of the university. The legal status of the State University being that of a technically private, or, at most, *quasi* public corporation, the university fund, of which it is the sole beneficiary, is, therefore, not a public fund, within the meaning of the law.

It can not be supposed that the act of 1879, repealing "all acts on the subject of interest, including such as relate to interest on public funds," etc., was intended to repeal any part of the several acts establishing the State University, or to affect the interest on its special endowment fund. There is no pretence, of course, that the law regulating the rate of interest at which the university fund is to be loaned, is repealed in express terms. If repealed at all it is by implication. No maxim receives more universal recognition, or is more rigidly adhered to by the courts, in the construction of statutes, than that the law does not favor repeals by implication. To statutes enacted, like that under consideration, for a special purpose, this rule has peculiar application. The legislature having by a special statute erected a corporation of the character described, and having made it the beneficiary of a special fund, with the loaning and management of which it has charged the auditor of state, whose duties in that re-

spect are specifically pointed out, that statute, with the amendments thereto, until it is expressly repealed or modified, must be regarded as furnishing the guide for the auditor's conduct.

It is worthy of consideration that the statute which is supposed to effect a repeal of the section regulating the rate of interest at which the auditor shall loan the university fund, contains, after the phrase " public funds," a specific enumeration of the funds upon which the rate of interest is fixed at eight per cent. These are "purchase-money of canal, college, school or saline lands, and upon the permanent school fund." The phrase " public funds " may be regarded as embracing, in a general sense, the particular funds subsequently enumerated.

This is according to " a well known rule for the construction of statutes, which, though ancient, is always adhered to," by which the general words in one clause of a statute may be limited and restrained by the particular words in the same or a subsequent clause. Sedgwick Statutory Construction, p. 360.

The application of this rule, as well as the other considerations mentioned, leads to the conclusion that the statute regulating the rate of interest to be paid upon the loan of the university fund, was in no wise affected by the later act, relating to the subject of interest upon public funds.

This conclusion results in the reversal of the ruling and judgment of the Marion Circuit Court.

Judgment reversed, with costs.

Filed June 17, 1887.